UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TINA BUSHEY,

                          Plaintiff,

v.                                              8:16-CV-0774
                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

SCHENIDER & PALCSIK                             MARK SCHNEIDER, ESQ.
  Counsel for Plaintiff
57 Court St.
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.                     JOSHUA KERSHNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 25.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Tina Bushey

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 13, 22.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1982.  (T. 92.)  She completed the eighth grade.  (T. 246.)  Generally, Plaintiff's alleged disability consists of degenerative disc disease, post-traumatic stress disorder ("PTSD"), autoimmune disorder, pain, "nerve blockages" in both legs, and sciatica pain in both legs.  (T. 92.)  Her alleged disability onset date is December 31, 2007.  (T. 90.)[1]  Her date last insured is September 30, 2012.  (T. 90.)  She previously worked as a cashier and in retail.  (T. 246.)

### B.    Procedural History

This case has a somewhat lengthy and complex jurisdictional history, which is outlined below.  Previous to the appeal before this Court, Plaintiff filed applications for benefits on October 15, 2007 and January 10, 2011.  (T. 93.)

### i.)    Bushey #1

Plaintiff's applications filed in 2007 were denied, Plaintiff sought judicial review in this Court, and the Commissioner's determination was upheld.  *See Tina Bushey a/k/a Tina Ladue v. Carolyn W. Colvin*, *Comm'r of Soc. Sec.*, No. 8:11-CV-0031-RFT, ECF No. 20 (N.D.N.Y. Mar. 29, 2013) ("Bushey #1").  Plaintiff appealed to the Second Circuit Court of Appeals which affirmed the Commissioner's final decision.  *See Bushey v. Covlin*, 552 F.App'x 97 (2d Cir. 2014) ("Bushey 2d Cir. #1").

---

[1]    Plaintiff's alleged onset date was amended to April 19, 2012.  (T. 10.)

### ii.)     Bushey #2

Plaintiff's applications filed in 2011 were also denied, Plaintiff again sought judicial review in this Court, and the Court again affirmed the Commissioner's determination.  *See Bushey v. Colvin*, No. 8:13-CV-0777, 2014 WL 4854984 (N.D.N.Y. Sept. 30, 2014) ("Bushey #2").  Plaintiff appealed to the Second Circuit Court of Appeals, and the Second Circuit again affirmed the Commissioner's decision.  *See Bushey v. Colvin*, 607 F.App'x 114 (2d Cir. 2015) ("Bushey 2d Cir. #2").  While the appeal was pending in the Second Circuit Plaintiff filed another set of applications for benefits on July 11, 2013.

### iii.)    Application and Determination At Issue

On July 11, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 90.)  Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On December 17, 2014, Plaintiff appeared before the ALJ, Dale Black-Pennington.  (T. 31-67.)  On March 3, 2015, ALJ Black-Pennington issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 7-27.)  On May 25, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 13-22.)  First, the ALJ found that Plaintiff met the insured status

requirements through September 30, 2012 and Plaintiff had not engaged in substantial gainful activity since April 19, 2012 (the date after the ALJ's determination in Bushey #2).  (T. 13.)[2]  Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, fibromyalgia, learning disorder, PTSD, and bilateral leg disorder.  (*Id.*)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 13-14.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work[3]; except Plaintiff could: sit in 30 minute intervals six hours in an eight hour workday; perform simple rote tasks; follow and understand simple oral instructions; learn new tasks with occasional supervision and re-instructions; have superficial and transactional contact with co-workers and the general public; and occasionally manage change to workplace environment and/or tasks.  (T. 14.)  Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 21-22.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

---

[2]     Plaintiff does not dispute the onset date of April 19, 2012.  (Dkt. No. 13 [Pl.'s Mem. of Law].)

[3]     Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff makes five separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ violated the treating physician rule.  (Dkt. No. 13 at 16-21 [Pl.'s Mem. of Law].)  Second, Plaintiff argues she did not have the RFC to work because of her combined impairments.  (*Id.* at 21-29.)  Third, Plaintiff argues the ALJ erred as a matter of law in rejecting her credibility without "clear and convincing evidence."  (*Id.* at 29-32.)  Fourth, Plaintiff argues the ALJ erred at step five in determining that she could be a document preparer, a surveillance system monitor, and a table worker.  (*Id.* at 32-34.)  Fifth, and lastly, Plaintiff argues the ALJ and the AC failed to develop the record.  (*Id.* at 34-35.)

## B.    Defendant's Arguments

In response, Defendant makes seven arguments.  First, Defendant argues the ALJ properly discounted the opinion and other evidence from sources not relating to the period at issue.  (Dkt. No. 22 at 5-14 [Def.'s Mem. of Law].)  Second, Defendant argues Plaintiff's impairments did not satisfy Listing 1.04.  (*Id.* at 14-16.)  Third, Defendant argues the ALJ properly assessed Plaintiff's credibility.  (*Id.* at 16-19.)  Fourth, Defendant argues the ALJ properly evaluated Plaintiff's mental impairments.  (*Id.* at 19-21.)  Fifth, Defendant argues Plaintiff is not disabled as a result of her alleged carpal tunnel syndrome.  (*Id.* at 21-22.)  Sixth, Defendant argues the ALJ's step five determination is supported by substantial evidence.  (*Id.* at 22-23.)  Seventh, and lastly, Defendant argues the ALJ and AC properly developed the record.  (*Id.* at 23-25.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

For ease of analysis Plaintiff's arguments will be addressed out of order and in a consolidated manner.

### A.     Evidence Not Relating to the Period at Issue

Plaintiff states, in a conclusory fashion, that "the law requires" this Court, and the ALJ, to consider all of the evidence prior to her onset date of April 19, 2012. (Dkt. No. 13 at 35 [Pl.'s Mem. of Law].) Plaintiff fails to provide a citation to "the law" which she is referring to.

In general, the ALJ had the duty to develop a complete medical history twelve months prior to Plaintiff's application date. 20 C.F.R. § 404.1512(d)(2) (2012-2014) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."). Here, Plaintiff's application date is July 11, 2013. (T. 10.)

The Court of Appeals for the Second Circuit upheld, as did Magistrate Judge Treece, the ALJ's December 29, 2010 decision finding Plaintiff not disabled. *See Bushey*, 552 F.App'x at 97. The Court of Appeals for the Second Circuit upheld, as did Chief Judge Suddaby, the ALJ's April 18, 2012 decision finding Plaintiff not disabled. *See Bushey,* 607 F.App'x at 114. The doctrine of *res judicata* bars consideration of a plaintiff's application for benefits to the extent the application includes a period of disability for which denial of prior applications has become final. 20 C.F.R. § 404.957(c)(1); *see Navan v. Astrue*, 303 F.App'x 18, at *20 (2d Cir. 2008) (prior determination by Commissioner finding plaintiff not disabled was binding as to plaintiff's disability during that time). Therefore, the ALJ properly concluded that, pursuant to the doctrine of *res judicata*, the decision of the ALJ dated April 18, 2012 was final and

binding with respect to the period through April 18, 2012 and she would only consider if Plaintiff's impairments became disabling since April 19, 2012.  (T. 10.)

Defendant argues that under the principle of collateral estoppel, Plaintiff is barred from presenting arguments relating to evidence in the record from her prior applications and litigated cases.  (Dkt. No. 22 at 6-9 [Def.'s Mem. of Law].)

The record before the ALJ, and this Court, contains medical records from 2010 through 2014.  (T. 25-27.)  Therefore, the record clearly contains medical documents 12 months preceding Plaintiff's current July 11, 2013 application for benefits.

With respect to claims for Social Security benefits under Title II and Title XVI, the concepts of claim and issue preclusion have been codified in the regulations.  *See* 20 C.F.R. § 404.957(c)(1) (allowing an administrative law judge to dismiss a hearing request based on the principle of *res judicata*) and 20 C.F.R. § 404.950(f) (allowing an administrative law judge to apply collateral estoppel to issues already decided in actions arising under different titles of the Social Security Act).  The Regulation states:

> Collateral estoppel - issues previously decided. An issue at your hearing may be a fact that has already been decided in one of our previous determinations or decisions in a claim involving the same parties, *but arising under a different title of the Act or under the Federal Coal Mine Health and Safety Act*. If this happens, the administrative law judge will not consider the issue again, but will accept the factual finding made in the previous determination or decision unless there are reasons to believe that it was wrong.

20 C.F.R. § 404.950(f) (emphasis added).  For example, a prior determination made by the Administration must be adopted for the same period on a new claim, unless the prior determination can be reopened.  *See* POMS § DI 27515.001.  However, this Court need not determine whether or not the doctrine of collateral estoppel, as outlined in the Regulations, applies here.  Regardless of whether the doctrine of collateral estoppel

applies or not, the ALJ made a determination based on the entire record before her.

The record was complete with no "obvious gaps," and for the reasons stated herein, her

determination was made in accordance with the Regulations and supported by

substantial evidence in the record.  It is therefore recommended that the ALJ's

determination be upheld.

### B.    The ALJ's Step Two Determination

Plaintiff argues that the ALJ erred in her step two determination that Plaintiff's

autoimmune disorder causing alopecia was a non-severe impairment.  (Dkt. No. 13 at

28-29 [Pl.'s Mem. of Law].)  Plaintiff also argues the ALJ erred by not considering her

carpal tunnel syndrome.  (*Id.* at 29.)

At step two of the sequential evaluation process, the ALJ must determine

whether the plaintiff has a severe impairment that significantly limits his or her physical

or mental ability to do basic work activities.  *See* C.F.R. §§ 404.1520(c), 416.920(c).

The plaintiff bears the burden of presenting evidence establishing severity. *Taylor v.

Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,*

No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20

C.F.R. §§ 404.1512(a), 416.912(a).  Although the Second Circuit has held that this step

is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030

(2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a

person has been diagnosed or treated for a disease or impairment" is not, by itself,

sufficient to render a condition "severe."  *Coleman v. Shalala,* 895 F.Supp. 50, 53

(S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

At step two the ALJ specifically acknowledged that Plaintiff alleged disability due to an autoimmune disorder causing alopecia. (T. 13.) However, the ALJ determined that this impairment was non-severe because it did not have an impact on Plaintiff's ability to perform basic demands of work. (*Id.*) Plaintiff argues that the ALJ's step two determination was made in error, because Plaintiff's autoimmune disorder also causes joint pain and Iritis. (Dkt. No. 13 at 29 [Pl.'s Mem. of Law].) In support of her argument, Plaintiff cites a medical report dated August 5, 2012, indicating diagnoses of "pain in

joint, multiple sites" and "Iritis." (*Id.* at 29, *referring to* T. 618.)  The report contains no other notations and no limitations associated with these diagnosis.  (T. 618.)

Subsequent notations from James Trice, M.D., the doctor who ordered the lab tests Plaintiff relies on to support her argument, actually indicated that Plaintiff did not have an autoimmune disorder.  Dr. Trice stated on September 5, 2012, "[t]he etiology of her [multiple joint pain] complaints is not yet defined[.]  Autoimmune causes for her joint pains would be less likely given the scenario."  (T. 610.)  Although the record cited by Plaintiff contains a diagnosis of joint pain, Iritis and alopecia, nowhere in the record is there a diagnosis of an autoimmune disorder.  Plaintiff has failed to meet her burden establishing her diagnosis of pain in joint, Iritis, and alopecia as a severe impairment. Therefore, the ALJ did not err in her conclusion that Plaintiff's alleged autoimmune disorder was not a severe impairment.

Plaintiff argues, without citation to the record, that Honorito Dispo, M.D., diagnosed Plaintiff with carpal tunnel syndrome based on an objective EMG test.  (Dkt. No. 13 at 29 [Pl.'s Mem. of Law].)  It is not the job of a court to "comb the record" for evidence that supports Plaintiff's assertions.  *Johnson v. Colvin*, No. 13-CV-6319, 2014 WL 1394365, at *6 (W.D.N.Y. Apr. 9, 2014) ("Since Plaintiff is represented by counsel, the Court presumes that if evidence in support of the memorandum's conclusory arguments were to be found, counsel would have cited to it. The Court is not required to comb the record in search of evidence in support of Plaintiff's position.")

However, a review of Dr. Dispo's records indicated that he did not diagnose Plaintiff with carpal tunnel syndrome.  (T. 452-453.)  A search of the record further indicated that on August 5, 2010, Dr. Dispo performed an electromyography ("EMG")

and nerve conduction exam. (T. 452.) This EMG test was performed on her right lower extremity and nowhere in Dr. Dispo's notation does he diagnose Plaintiff with carpal tunnel syndrome. (*Id.*) Therefore, Plaintiff's contention, is without merit. It is recommended that the ALJ's step two determination be upheld.

### C.    The ALJ's Step Three Determination

#### i.)    Listing 1.04: Disorders of the Spine

Plaintiff argues that she meets the limitations of Listing 1.04A, which provides the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Plaintiff argues, without citation to the record, that she has the following evidence of nerve root compression: radiculopathy, limitation of motion, sensory or reflex loss, and a positive straight-leg raise. (Dkt. No. 13 at 23-24 [Pl.'s Mem. of Law].) Also of note, Plaintiff made this exact argument, almost verbatim, to the Court in Bushey #2.

Again, it is not the job of a court to comb the record for the evidence that supports Plaintiff's assertions. *Johnson,* 2014 WL 1394365, at *6. However, the Court's review of the record reveals that a November 2012 examination note by Ellen Gaughan, M.D. indicated decreased body pain, no tenderness to palpation,

no spasm, and no new weakness or sensory loss. (T. 674.) A January 2013 examination note by Dr. Gaughan indicated pain to palpation over lumbar intervertebral processes and no new weakness or sensory loss. (T. 676.) A February 2013 notation indicated "significant decrease in aching in the back," no spasm or tenderness on examination, and no new weakness or sensory loss. (T. 678.) In March, May, and June of 2013, Dr. Gaughan noted no spasm or tenderness on examination, and no new weakness or sensory loss. (T. 680, 682, 684.) On August 9, 2013, Dr. Gaughan noted "ankylosing spondylosis with chronic back pain that responds to narcotics." (T. 687.) A musculoskeletal exam at that time only indicated that Plaintiff's gait was non-antalgic. (*Id.*) On September 5, 2013, Dr. Gaughan noted "left sciatica superimposed on chronic back pain which responds to narcotics." (T. 689.) An exam at the time only indicated that Plaintiff's gait was non-antalgic, and there was no new weakness or sensory loss. (*Id.*) Dr. Gaughan again noted in November of 2013 "ankylosing spondylosis associated pain controlled with narcotics," and no new weakness or sensory loss. (T. 697.)

An examination from March 2014 indicated that Plaintiff had normal muscle bulk and tone, and full strength in all muscle groups. (T. 701-702.) Dr. Gaughan stated that medication allowed Plaintiff to do her activities of daily living and she was "relatively comfortable." (T. 702.) Dr. Gaughan noted in June of 2014 that Plaintiff's back pain responded to narcotics, she was not a candidate for surgery, she did not respond well to injections, and weight loss would contribute to lowering her total pain. (T. 703.) An examination performed on

June 17, 2014, indicated that Plaintiff had normal muscle bulk and tone, full strength in all muscle groups, normal gait, and she could perform tandem gait without difficulty.  (T. 707-708.)  Dr. Gaughan noted that Plaintiff's back pain was "well controlled with morphine."  (T. 708, 713.)

Consultative examiner, Nader Wassef, M.D. examined Plaintiff on September 26, 2013 and provided a medical source statement.  (T. 380-384.)  Dr. Wassef noted on examination that Plaintiff's cervical and lumbar spine had full range of motion.  (T. 383.) He observed that Plaintiff had discomfort during the examination of her back.  (*Id.*) Plaintiff had bilateral positive straight leg raise tests in the sitting position.  (*Id.*)  Dr. Wassef noted no sensory loss and Plaintiff had full strength in her upper and lower extremities.  (*Id.*)  Dr. Wassef observed that Plaintiff walked with a "slight limp," was unable to walk on heels and toes, was unable to squat, had a normal stance, and had a cane with her.  (T. 382.)

Plaintiff bears the burden of proof as to the first four steps of the sequential process and here Plaintiff fails to provide evidence in the record, indeed Plaintiff fails to even cite to the record, that her spinal impairments meets or equals Listing 1.04.  *See Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir. 2008). Accordingly, the record does not support a conclusion that Plaintiff meets Listing 1.04.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("to match any Listed impairment [in 20 C.F.R. 404 Subpt. P App. 1], claimant must satisfy all of the specified medical criteria . . . even a severe impairment will not qualify if it meets only some, but not all, of the required medical criteria.").

      **ii.)    Listing 12.05**

Plaintiff argues that her mental impairments meet Listing 12.05.  (Dkt. No. 13 at 25-27 [Pl.'s Mem. of Law].)  In her step three determination the ALJ specifically found that Plaintiff did not meet the requirements of Listing 12.02 or 12.06.  (T. 13-14.)  Plaintiff does not argue that the ALJ erred in her determination that she did not meet or equal Listing 12.02 or 12.06.  (Dkt. No. 13 at 25-27 [Pl.'s Mem. of Law].)

Listing 12.05 addresses intellectual disability; and plaintiffs are *per se* disabled if the requirements of paragraphs A, B, C, or D are met.  *See* 20 C.F.R. §§ 404.1525(a), 416.925(a).

Listing 12.05 requires, "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.05 (2015).  The requirements of paragraph C are met if a plaintiff has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id.*

Adaptive functioning refers to an individual's "[ ]ability to cope with the challenges of ordinary everyday life."  *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (quoting *Novy v. Astrue,* 497 F.3d 708, 710 (7th Cir. 2007)).  Accordingly, courts have held that if a plaintiff is able to satisfactorily navigate activities such as "liv[ing] on [one's] own," "tak[ing] care of ... children ... without help ... sufficiently well that they have not been adjudged neglected," "pay[ing] bills," and "avoid[ing] eviction," the plaintiff does not suffer from deficits in adaptive functioning.  *Talavera,* 697 F.3d at 153.  This District has previously looked to factors such as living on one's own, independently caring for

16

children, cooking, paying bills, communication abilities, and daily living skills as indications of deficits in adaptive functioning. *Stephens v. Colvin*, No. 3:15-CV-00622, 2016 WL 4094885, at *6 (N.D.N.Y. Aug. 2, 2016) (citing *Barton v. Astrue*, No. 3:08-CV-0810, 2009 WL 5067526, at *7 (N.D.N.Y. Dec. 16, 2009).

To be sure, the ALJ did not specifically address Listing 12.05C in her determination. (T. 13-14.) An ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment," however, the absence of an express rationale for an ALJ's conclusions does not prevent a court from upholding them so long as we are "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Berry v. Schweiker,* 675 F.2d 464, 469 (2d Cir. 1982).

Although the ALJ might have been more specific in detailing the reasons for concluding Plaintiff's condition did not satisfy this Listing, other portions of the ALJ's detailed decision, demonstrate that substantial evidence supports this part of the ALJ's determination. *See Salmini v. Comm'r Soc. Sec.,* 371 F.App'x. 109 (2d Cir. 2010).

On November 21, 2014, Richard Liotta, Ph.D., performed a consultative psychological evaluation of Plaintiff at the request of Clinton County Department of Social Services. (T. 654-656.) Testing indicated that Plaintiff had a full scale IQ of 66 with the following composite scores: verbal comprehension 72, perceptual reasoning 65, working memory 71, and processing speed 79. (T. 655.) Dr. Liotta opined that Plaintiff "appear[ed] to have difficulty with various adaptive skills" and that her attention and concentration abilities were "significantly impaired." (T. 656.) Dr. Liotta indicated that Plaintiff's diagnoses was "intellectual disability, mild." (*Id.*)

The ALJ noted that Plaintiff achieved a full scale IQ score of 66.  (T. 17.)  The ALJ also discussed Dr. Liotta's opinion concerning Plaintiff's mental limitations.  (*Id.*)  The ALJ afforded Dr. Liotta's opinion "limited weight" reasoning he did not have an accurate account of Plaintiff's background, for example, he did not have information showing that she transitioned out of special education classes.  (T. 19.)  The ALJ cited other conflicts in the record and evidence that despite Plaintiff's allegations to Dr. Liotta, she did not suffer from deficits in adaptive functioning.  (*Id.*)  For example, Plaintiff alleged that she could not read or comprehend written language; however, she completed her activities of daily living form by herself.  (*Id.*)  The ALJ also noted that Plaintiff was responsible for maintaining proper dosage and safe keeping of narcotic medication.  (*Id.*)  The ALJ further noted that although Plaintiff was in special education in elementary school, she transitioned into regular classes.  (*Id.*)  Plaintiff also previously worked as a cashier and cook, which indicated that she was capable of performing the reading and math requirements of those occupations, contrary to her statement to Dr. Liotta that she could not do math or count.  (*Id.*)  Plaintiff was also able to care for her personal needs, perform child care for her children and occasionally for her step-children.  (T. 20.)  Therefore, although Plaintiff had a full scale IQ score of 66, she did not have the requisite deficits in adaptive functioning.

The ALJ did not specifically address Listing 12.05C in making her determination; however, it is apparent from the ALJ's discussion that she thoroughly reviewed the medical evidence in the record containing IQ testing, and she outlined Plaintiff's activities of daily living and other factors indicating Plaintiff did not have the required

deficits in adaptive functioning.  Therefore, it is recommended that the ALJ's step three determination be upheld.

### iii.)    Listing 14.00: Immune System Disorders

Plaintiff argues that she meets Listing 14.00.  (Dkt. No. 13 at 28-29 [Pl.'s Mem. of Law].)  Plaintiff does not assert which specific Listing she meets.  (*Id.*)  Listing 14.00 encompasses immune disorders ranging from lupus, to connective tissue disease, to HIV.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00.  Plaintiff states, without citation to the record, that "objective laboratory tests indicate that she is suffering from an autoimmune disorder."  (*Id.* at 28.)  As stated herein, the record contains no diagnosis of an autoimmune disorder and Dr. Trice's treatment notations indicate that Plaintiff did not suffer from such.  (T. 610.)

Of note, this Court previously determined that the ALJ did not err in his determination that Plaintiff's autoimmune disorder was not a severe impairment and did not meet a listing.  *Bushey,* 2014 WL 4854984, at *6, *aff'd,* 607 F. App'x 114 (2d Cir. 2015) ("Dr. Trice went on to explain that 'The etiology of [Plaintiff's] complaints is not yet defined. Metabolic causes for joint pain such as B 12 deficiency, hypothyroidism and hemochromatosis are raised. Autoimmune causes for her joint pain would be less likely given the scenario[.]' Accordingly, the ALJ did not err in his conclusion that Plaintiff's autoimmune disorder is not identified within the record as a medically determinable impairment.")

Plaintiff failed to provide evidence in the record that she meets a Listing under 14.00 and a review of the record finds no evidence to support Plaintiff's claim that she is disabled pursuant to Listing 14.00.  *See Rockwood v. Astrue*, 614 F.Supp. 2d 252, 275

(N.D.N.Y. 2009.)  Therefore, it is recommended that the ALJ's step three determination be upheld.

### D.    The ALJ's Mental RFC Determination

Plaintiff's RFC is "the most [she] can still do despite [her] limitations."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  In formulating Plaintiff's RFC, the ALJ will consider "all of the relevant medical and other evidence" in the record.  *Id.* at §§ 404.1545(a)(3); 416.945(a)(3).

Here, the record contained a 2010 psychiatric consultative examination by Alan Dubro, Ph.D.; a 2011 psychiatric review technique form and RFC assessment completed by a non-examining State agency consultant J. Alpert, Psychiatry; a 2013 psychiatric consultative examination by Brett Hartman, Psy.D.; a 2013 RFC assessment completed by a non-examining State agency consultant, Michelle Marks, Ph.D.; a 2013 medical source statement from Plaintiff's treating source, Jacquelyn Connelly, Ph.D.; and a 2014 psychological evaluation by Dr. Liotta.

On April 9, 2010, Dr. Dubro performed a psychiatric evaluation and provided a medical source statement.  (T. 402-410.)  On examination, Dr. Dubro observed that Plaintiff was cooperative, her speech was fluent and clear, her thought processes were coherent and goal directed, her mood was euthymic, her affect was appropriate, her sensorium was clear, and she was oriented.  (T. 403.)  He further observed that her attention and concentration were mildly impaired "secondary to cognitive processing difficulties."  (T. 404.)  Plaintiff was able to perform "simple math" and required repetition in order to perform two-step arithmetic.  (*Id.*)  Dr. Dubro observed that Plaintiff's memory was mildly impaired second to cognitive processing difficulties.  (*Id.*)  He opined that

Plaintiff could follow and understand simple directions and instructions; attend to and remember simple directions and instructions; her attention and concentration were mildly impaired; she would likely have mild difficulties in learning new tasks; she was able to perform daily tasks independently; she required "some assistance" in performing complex tasks "secondary to pain-related symptoms"; she was able to relate adequately with others; she could make appropriate decisions; she could attend to a routine and maintain a schedule.  (*Id.*)

On September 26, 2013, Brett Hartman, Ph.D., performed a psychiatric evaluation and provided a medical source statement.  (T. 373-378.)  Dr. Hartman observed that Plaintiff's attention and concentration appeared to be mildly impaired, she could count without difficulty, but made errors with calculations and lost track during serial 3s.  (T. 375.)  He observed that her memory appeared to be "generally intact." (*Id.*)  He indicated that Plaintiff's cognitive functioning "appeared to be in the low average to borderline range."  (*Id.*)  In a medical statement Dr. Hartman opined that Plaintiff could follow and understand simple directions, perform simple tasks, maintain a regular schedule, and make appropriate decisions.  (T. 376.)  He opined that she had "mild difficulty" maintain attention and concentration and relating adequately with others; she had "mild to moderate difficulty" learning new tasks; and she had "moderate difficulty" performing complex tasks independently and dealing appropriately with the normal stressors of life.  (*Id.*)

On October 31, 2013, Dr. Marks reviewed the record and provided an RFC assessment.  (T. 107-111.)  Dr. Marks opined that based on a review of the record at that time, Plaintiff had moderate limitations in her ability to: understand and remember

detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the public; and respond appropriately to changes in the work setting.  (T. 107-109.)

Dr. Marks opined that Plaintiff was not significantly limited in her ability to: remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; accept instructions and respond appropriately to criticism; get along with coworkers or peers; maintain socially appropriate behavior; be aware of normal hazards; travel in unfamiliar places; and set realistic goals.  (T. 108-109.)  Dr. Marks stated that Plaintiff was able to understand and remember instructions and work procedures, maintain adequate attention and concentration, and respond to supervisors and coworkers.  (T. 109.)  Dr. Marks opined that Plaintiff exhibited some difficulty with adaptation, but was able to cope with basic changes.  (*Id.*)

On November 12, 2013, Dr. Connelly completed a medical source statement for the New York State Office of Temporary and Disability Assistance Division of Disability Determinations.  (T. 386-392.)  At the time she completed the form she had seen Plaintiff six times.  (T. 386.)  Dr. Connelly stated that during Plaintiff's intake she was oriented, her thoughts were logical, there was no evidence of thought disorder, her

mood was congruent with affect, she appeared depressed, her affect was "somewhat flat," she was tearful as she recounted her father's death, she was cooperative and appeared motivated to improve her mood and manage her grieving.  (T. 387, 391.) When asked to provide specific opinions regarding Plaintiff's ability to perform work functions, Dr. Connelly responded that she was unable to provide an assessment.  (T. 388, 392.)  However, Dr. Connelly did state that there did not appear to be any significant impairments with Plaintiff's memory.  (T. 392.)

As stated herein, Dr. Liotta examined Plaintiff on November 21, 2014.  (T. 654-656.)  Dr. Liotta opined that Plaintiff "would likely have significant problems functioning in a work setting."  (T. 656.)  He further opined that Plaintiff would have "significant difficulty with attention and concentration," her comprehension was low, and her overall prognosis for improvement was poor.  (*Id.*)

Plaintiff contends that the ALJ erred in her mental RFC determination on numerous grounds.  First, Plaintiff argues the ALJ "erroneously ignored the 2010 opinion of the Commissioner's consultant Dr. Welch" and "failed to follow [his] recommendation."  (Dkt. No. 13 at 19 [Pl.'s Mem. of Law].)  Plaintiff's argument is without merit.

In February of 2010, in connection with Plaintiff's first application for benefits, Dr. Welch examined Plaintiff and stated, in part, that she had "significant learning disabilities and as part of an overall assessment it is critical that either her old school records be reviewed or that a more recent psychological assessment regarding her true psychological and cognitive function be included as part of the overall evaluation."  (T. 394-395.)

On March 30, 2011, in connection with Plaintiff's second application for benefits, Dr. Welch again examined Plaintiff. (T. 458-460.) He stated that Plaintiff had a "probable significant learning disability" and "[c]ognitvely this young lady leaves a great deal to be desired." (T. 458-459.)

The ALJ did not err in not specifically addressing Dr. Welch's statements, nor did the ALJ fail to follow his recommendation. As an initial matter, an ALJ's failure to cite specific evidence does not indicate that it was not considered. *Barringer v. Comm'r of Social Sec.,* 358 F.Supp.2d 67, 78-79 (N.D.N.Y. 2005). First, Dr. Welch's statements were provided more than a year prior to Plaintiff's alleged onset date. Second, Dr. Welch's statements did not provide any specific limitations regarding Plaintiff's mental capacity. Third, the record before the ALJ contained, as recommended by Dr. Welch, more recent assessments of Plaintiff's mental abilities. Therefore, the ALJ did not err in failing to specifically address Dr. Welch's statement and the record before the ALJ contained more recent mental evaluations.

Plaintiff next argues the ALJ failed to properly weigh the opinion of Dr. Liotta. (Dkt. No. 13 at 20 [Pl.'s Mem. of Law].) As stated in Part IV.C.ii, the ALJ properly assessed the findings and opinion of Dr. Liotta.

Plaintiff also appears to argue that, based on Dr. Hartman's examination, Plaintiff had more than a "mild difficulty" maintaining attention and concentration because she had difficulty with serial 3s. (Dkt. No. 13 at 26 [Pl.'s Mem. of Law].) It appears that Plaintiff copied from her brief in Bushey #2, without changing her citations, because Plaintiff provides the citation from the record in Bushey #2 which contained an examination by Dr. Hartman from 2008. Dr. Hartman's report from 2008 was not in the

administrative record before the ALJ or this Court. Defendant provides an accurate outline of the multiple arguments made Plaintiff's previously litigated cases before this Court. (Dkt. No. 22 at 19 [Def.'s Mem. of Law].)

Dr. Hartman's 2013 examination, which is in the administrative record before this Court, indicated that Plaintiff "lost track during the serial 3s." (T. 375.) However, Dr. Hartman opined that Plaintiff's attention and concentration were only "mildly impaired." (*Id*.) Plaintiff argues that her difficulty with serial 3s does not support the conclusion that Plaintiff had "mild difficulties." (Dkt. No. 13 at 26 [Pl.'s Mem. of Law].) Plaintiff also relies on Dr. Dubro's comment that Plaintiff's cognitive abilities appeared to be below average and Dr. Welch's statement that Plaintiff had "significant learning disabilities." (Dkt. No. 13 at 26-27 [Pl.'s Mem. of Law].)

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review). Here, Plaintiff essentially asks the Court to re-weigh evidence in the record, and even evidence that is not in the record. Plaintiff failed to

show that no reasonable fact finder could have reached the ALJ's mental RFC determination.

Overall, the record before the ALJ contained cognitive testing and opinions regarding Plaintiff's mental abilities in a work setting.  The ALJ determined that Plaintiff could perform rote tasks, could follow simple instructions, could learn new tasks with supervision and re-instruction, could have superficial and transactional contact with coworkers and public; and could occasionally manage change in the workplace environment and/or tasks.  (T. 14.)  In making her determination, the ALJ afforded the opinion of Dr. Hartman "great weight" and the opinions of Drs. Marks and Connelly "some weight."  (T. 19-20.)  It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e); *see Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *Snyder v. Colvin,* No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016).  The ALJ also properly afforded the opinion of Dr. Liotta "limited weight" as discussed herein.  (T. 19.)  The ALJ's mental RFC determination is consistent with the opinions of Drs. Hartman and Marks, who ultimately opined Plaintiff was capable of performing simple, unskilled work.  Therefore, for the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's mental RFC determination be upheld.

    **E.    The ALJ's Physical RFC Determination**

Plaintiff argues that the ALJ erred in weighing the medical evidence in the record concerning Plaintiff's physical impairments.  (Dkt. No. 13 at 17-18, 20, 21-23 [Pl.'s Mem. of Law].)  Plaintiff appears to argue that the ALJ failed to give proper weight to an MRI conducted on July 6, 2010, the August 2010 EMG, and 2012 testing results from Fletcher Allen Health Center.  (*Id.* at 17.)  Plaintiff also makes a vague reference to "findings and opinions" of Dr. Gaughan without citation to the record.  (*Id.* at 17-18.)  Plaintiff also argues that the opinion of consultative examiner, Nader Wassef, M.D. supported greater limitations.  (*Id.* at 20.)  Lastly, Plaintiff argues the ALJ failed to take into consideration the combined effects of Plaintiff's impairments.  (*Id.* at 21-22.)  Here, the ALJ properly considered the objective medical evidence in the record and properly weighed the opinion evidence in the record.

Plaintiff's primary care physician, Ellen Gaughan, M.D. treated Plaintiff for her back and leg pain.  As outlined in Part IV.C.i, Dr. Gaughan's physical examinations were relatively normal and the ALJ thoroughly outlined Dr. Gaughan's treatment notations in her determination (T. 16.)  The ALJ did not afford a specific weight to Dr. Gaughan's records because she did not provide a medical source statement; however, the ALJ relied on objective notations in making her physical RFC determination.

Plaintiff mentions a 2010 MRI and a 2010 EMG in her brief without specific citation to the record.  (Dkt. No. 13 at 17-18 [Pl.'s Mem. of Law].)  A review of the record before the ALJ contained a 2010 MRI of Plaintiff's lumbar spine.  (T. 451.)  The MRI indicated disc degeneration at L3-L4 with global disc bulge and central disc herniation at L4-L5 with bilateral lateral recess stenosis.  (*Id.*)  The record also contained a 2010 EMG, previously outlined herein, indicating right radiculopathy of the lower extremity.

(T. 452.)  The reports, without more, indicate that Plaintiff suffered a lumbar impairment. The ALJ determined, at step two, that Plaintiff suffered from degenerative disc disease and a bilateral leg disorder.  (T. 13.)  The objective medical imagining cited by Plaintiff supports the ALJ's step two determination.

Plaintiff further asserts the objective testing from Fletcher Allen Health Center indicates that Plaintiff suffered an autoimmune disease.  (Dkt. No. 13 at 18-19 [Pl.'s Mem. of Law].)  However, as stated in Part IV.C.iii, the ALJ properly determined, based on the medical evidence in the record, that Plaintiff did not have an autoimmune disorder.

Contrary to Plaintiff's assertion, the ALJ did not err in affording "some weight" to the opinion of Dr. Wassef.  (Dkt. No. 13 at 20-21 [Pl.'s Mem. of Law].)  Dr. Wassef opined that Plaintiff had moderate limitations in standing, walking, climbing stairs, sitting for "too long," bending, squatting, and lifting.  (T. 384.)  Dr. Wassef further opined that Plaintiff had "marked limitations" in pulling and pushing.  (*Id.*)  The ALJ assigned Dr. Wassef's opinion "some weight," noting that the doctor's opinion was not a function by function analysis.  (T. 18.)  The ALJ took into consideration notations from Dr. Gaughan and other providers.  (T. 20.)  Dr. Gaughan observed, as outline previously herein, that Plaintiff's gait was normal and her pain responded to medication.  The ALJ properly relied on other providers' notes and recorded findings that contradicted Plaintiff's allegations of severe pain and functional loss.  (*Id.*)  Indeed, in January, April and July of 2013, Plaintiff denied musculoskeletal symptoms.  (T. 314, 316, 318.)  Therefore, the ALJ did not err in affording Dr. Wassef's opinion "some weight."  The ALJ properly relied on other medical evidence in the record in affording Dr. Wassef's opinion some weight.

Plaintiff also makes the argument that the ALJ failed to take into consideration the combined effects of Plaintiff's impairments. (Dkt. No. 13 at 21-23, 28-29 [Pl.'s Mem. of Law].) To be sure, "the combined effect of a claimant's impairments must be considered in determining disability; the [Commissioner] must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe." *McIntyre v. Colvin*, 758 F.3d 146, 151-52 (2d Cir. 2014) (citing *Dixon,* 54 F.3d at 1031).

Here, the ALJ thoroughly outlined, discussed, and evaluated all of Plaintiff's impairments, severe and non-severe. At step two the ALJ determined Plaintiff's degenerative disc disease, fibromyalgia, learning disorder, PTSD and bilateral leg disorder were severe impairments. (T. 13.) The ALJ also noted at step two that Plaintiff alleged an autoimmune disorder causing alopecia. (*Id.*) The ALJ outlined Plaintiff's testimony regarding her impairments, their symptoms, and their limiting affects. (T. 15.) The ALJ summarized in great detail Plaintiff's medical care for all of her impairments, severe and non-severe. (T. 16-21.) Therefore, there is no indication from the ALJ's thorough decision that she did not take into consideration the combined effects of Plaintiff's impairments.

The ALJ's RFC determination is supported by the overall medical evidence in the record. An ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v.*

*Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).  The ALJ relied on the medical opinion of Dr. Wassef, objective treatment notations and findings of Plaintiff's providers, and Plaintiff's activities of daily living in formulating her physical RFC determination.  Therefore, for the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's weighing of the evidence and physical RFC determination be upheld.

###    F.    The ALJ's Credibility Determination

Plaintiff argues that the ALJ erred in her credibility determination.  (Dkt. No. 13 at 24-25, 27-28, 29-32 [Pl.'s Mem. of Law].)

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms.  *See* 20 C.F.R. §§ 404.1529, 416.929.  First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments

"could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Here, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  (T. 15.)

Plaintiff first argues, without citation to the record, that the ALJ erred in failing to credit Plaintiff's subjective testimony of pain regarding her spinal disorder because it was supported by objective evidence.  (Dkt. No. 13 at 24-25 [Pl.'s Mem. of Law].) Elsewhere in her brief, Plaintiff argues that the ALJ failed to provide "any explanations supporting [her] bald [credibility] conclusion."  (*Id.* at 32.)  Plaintiff again asserts, without

citation to the record, objective medical evidence supported Plaintiff's testimony.  (*Id.* at 32.)

Here, the ALJ followed the Regulation in making her credibility determination and her determination was supported by substantial evidence.  The ALJ noted that the record supported medically determinable impairments; however, Plaintiff's allegations of pain and limitations were not supported by the medical record.  Specifically, the ALJ noted "unremarkable" treatment notations from Dr. Gaughan, the physical examination by Dr. Wassef, and mental examinations by Dr. Hartman and Liotta.  (T. 16-17.)  The ALJ also relied on Plaintiff's testimony regarding her activities of daily living and inconsistencies in Plaintiff's statements.  For example, the ALJ noted that Plaintiff alleged an inability to read and comprehend written language; however, she reported on her activities of daily living report that she completed the form herself, which demonstrates an ability to read.  (T. 19.)  The ALJ also noted that in a prior determination, dated April 18, 2012, the ALJ indicated that Plaintiff was in special education classes, but was able to transition to regular classes after elementary school. (T. 19.)  Plaintiff also held a job as a cashier.  (*Id.*)  The ALJ concluded that such findings were inconsistent with Plaintiff's allegations of having "drastic cognitive limitations."  (*Id.*)  Plaintiff reported that she could dress herself, bathe, do a little bit of cleaning, prepare simple meals, help with childcare, shop for groceries, watch television, and socialize.  (T. 255-259, 376, 381.)

Plaintiff next argues that the ALJ failed to consider the side effects of Plaintiff's medication.  (Dkt. No. 13 at 27-28 [Pl.'s Mem. of Law].)  Contrary to Plaintiff assertion, the ALJ did consider the side effects of Plaintiff's medication.  The ALJ specifically

noted that "as long as she has been on narcotic medication, [Plaintiff] has consistently denied fatigue or slowness." (T. 19, *referring to* T. 674-721.)

Therefore, the ALJ properly found Plaintiff to be "not entirely credible." In making her credibility determination the ALJ properly relied on medical evidence in the record, objective treatment notations, inconsistencies in Plaintiff's testimony, Plaintiff's activities of daily living, and side effects of medication. Therefore, for the reasons state herein, and further outlined in Defendant's brief, it is recommended that the ALJ's credibility determination be upheld.

### G.    The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

Plaintiff argues that the ALJ's step five determination was not supported by substantial evidence because the ALJ's hypothetical to the vocational expert ("VE") was based on an erroneous RFC. (Dkt. No. 13 at 32-34 [Pl.'s Mem. of Law].) Plaintiff's argument relies on her earlier arguments that the ALJ's RFC determination was erroneous. Because we find no error in the ALJ's RFC assessment, we likewise

conclude that the ALJ did not err in posing a hypothetical question to the vocational

expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545,

1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that

was based on substantial evidence in the record); *see Wavercak v. Astrue*, 420 F.App'x

91, 95 (2d Cir. 2011) ([b]ecause we have already concluded that substantial evidence

supports the RFC finding, we necessarily reject [plaintiff's] vocational expert challenge").

　　　Plaintiff also argues that the number of jobs identified by the VE was insufficient

to constitute a significant number of jobs in the national economy.  (Dkt. No. 13 at 33

[Pl.'s Mem. of Law].)  The VE testified that Plaintiff could perform work as a document

preparer (DOT # 249.587-018) with 44,854 jobs in the national economy, surveillance

system monitor (DOT # 379.367-010) with 3,854 jobs in the national economy, and

table worker (DOT # 739.687-018) with 2,538 jobs in the national economy.  (T. 59-60.)

　　　Neither the Regulations nor the Social Security Rulings define "significant

number."  *Koutrakos v. Colvin,* No. 3:13-CV-1290, 2015 WL 1190100, at *20-22

(D.Conn. Mar. 16, 2015).  Courts have held that a "significant number" of jobs is "fairly

minimal."  *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229 (N.D.N.Y. 2015)

(citing *Rosa v. Colvin*, No. 12-CV-0170, 2013 WL 1292145, at *9 (N.D.N.Y.  March 27,

2013)).  Courts have held that numbers varying from 9,000 upwards constituted

"significant."  *See Hoffman v. Astrue*, No. 09-CV-5252, 2010 WL 1138340, at *15

(W.D.Wash. Feb. 8, 2010) (9,000 jobs in the national economy was found significant)

(*citing Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 jobs in the national

economy was found significant)).  Therefore, a total of 51,246 jobs in the national

economy is a significant number and it is recommended that the ALJ's step five determination be upheld.

### H.    Development of the Record

Lastly, Plaintiff argues that the ALJ and the AC failed to fully develop the record. (Dkt. No. 13 at 34-35 [Pl.'s Mem. of Law].)  To be sure, the ALJ has an affirmative duty to develop the record.  *See Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009) ("[I]t is the well-established rule in our circuit that the social security ALJ ... must on behalf of all claimants ... affirmatively develop the record ...." (quoting *Lamay v. Comm'r of Soc. Sec.,* 562 F.3d 503, 508-509 (2d Cir.2009)) (internal quotation omitted)).  As stated herein, an ALJ is bound to develop a plaintiff's complete medical history for at least twelve months prior to the filing of an application for benefits, "but also to gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision."  *DeChirico v. Callahan,* 134 F.3d 1177, 1184 (2d Cir.1998).

However, the affirmative obligation to develop an administrative record does not extend to infinity and is not without limit.  *See Guile v. Barnhart,* No. 07-CV-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010).  Reviewing courts have held that ALJs are not required to seek additional information absent "obvious gaps" that preclude an informed decision. *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir.1999); *see also Hart v. Comm'r of Soc. Sec.,* No. 07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012).

Here, the ALJ had before her a complete record with no "obvious gaps."  The record included Plaintiff's medical records dating back to 2010, which is approximately

three years before Plaintiff's alleged onset date in this case.  The records contained

numerous treating notations form treating providers, consultative examinations, and

cognitive testing.  Therefore, the record before the ALJ was complete and provided

sufficient evidence upon which the ALJ could formulate Plaintiff's RFC.  It is

recommended that the ALJ's determination be upheld, because her determination was

based on a complete record, and substantial evidence from that record supported the

ALJ's determinations at each step of the sequential process.

**ACCORDINGLY**, based on the findings above, it is

  **RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the

Plaintiff's complaint **DISMISSED.**

  Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have

**FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.

Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated: July 24, 2017

        William B. Mitchell Carter

        U.S. Magistrate Judge